IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 MAY 19 PM 4: 25

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**360 MORTGAGE GROUP, LLC,**
        **Plaintiff,**

-vs-                                                                **Case No. A-13-CA-942-SS**

**STONEGATE MORTGAGE CORPORATION
and LISA B. GLENN,**
        **Defendants.**

## ORDER

BE IT REMEMBERED on April 23, 2014, the Court called a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant Lisa B. Glenn's Motion to Dismiss for Lack of Jurisdiction and Improper Venue [#6], Glenn's Supplemental Motion to Dismiss for Lack of Jurisdiction [#18], Plaintiff 360 Mortgage Group, LLC's Response [#28], Glenn's Reply [#30], and 360 Mortgage's Surreply [#37]; Defendant Stonegate Mortgage Corporation's Motion to Transfer Venue [#31], 360 Mortgage's Response [#38], and Stonegate's Reply [#31]; and Stonegate's Motion to Dismiss for Failure to Join an Indispensable Party [#32], 360 Mortgage's Response [#39], and Stonegate's Reply [#45]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING Glenn's motion to dismiss, and in addition (and in the alternative) TRANSFERRING this case to the United States District Court for the Eastern District of North Carolina, Raleigh Division.

## Background

360 Mortgage has sued its former employee, Glenn, and her new employer, Stonegate, alleging those two conspired to steal alleged trade secret information from 360 Mortgage and use that information to take 360 Mortgage's customers. The case was filed in Texas state court on September 20, 2013. Stonegate removed to this Court on October 23, 2013, on the basis of diversity jurisdiction. Since that time, the parties have been engaged in jurisdictional discovery and extensive motion practice[1] before this Court concerning the proper venue to try this lawsuit.

360 Mortgage is a national mortgage lender incorporated in Delaware and headquartered in Austin, Texas. 360 Mortgage uses a network of company-approved mortgage brokers to originate the loans it ultimately funds. Stonegate is one of 360 Mortgage's competitors, and also relies on mortgage brokers to bring in business. Stonegate is an Ohio corporation with its principal place of business in Indianapolis, Indiana. Glenn previously worked as an account executive for 360 Mortgage, operating exclusively in the North Carolina market. Glenn presently works for Stonegate, and continues to work solely in North Carolina. At both companies, Glenn's responsibilities included identifying and working with brokers and loan officers in North Carolina. 360 Mortgage alleges Glenn impermissibly took a "trade secret" list of North Carolina brokers (including contact information and possibly other details, such as loan officers who work with each broker) with her when she left 360 Mortgage and joined Stonegate, and is now using those contacts to siphon business away from 360 Mortgage in North Carolina.

---

[1] The pending motions comprise roughly 170 pages of briefing, exclusive of exhibits.

The parties' disputes are primarily twofold. First, Glenn argues this Court cannot validly exercise personal jurisdiction over her because she lacks minimum contacts with the State of Texas.[2] Second, Stonegate (joined at least in spirit by Glenn) argues this case should be transferred to federal court in North Carolina, which is the true heart of the conflict. In the alternative, Stonegate argues a dismissal of Glenn for lack of personal jurisdiction also requires a dismissal of Stonegate on the theory 360 Mortgage will have then failed to join an indispensable party to the suit.[3]

## Analysis

### I. Motion to Dismiss—Personal Jurisdiction

#### A. Legal Standard

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense. FED. R. CIV. P. 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as

---

[2] Glenn also urges dismissal because venue is improper under the general venue statute, 28 U.S.C. § 1391. The Court rejects this argument because venue in this removed case is governed by the general removal statute, 28 U.S.C. § 1441, which authorizes removal to the federal court "for the district and division embracing the place where [the state court] action is pending." 28 U.S.C. § 1441(a); *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66 (1953); *Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400–01 (5th Cir. 2008).

[3] The Court briefly rejects this argument because this Court could "accord complete relief among existing parties" even if Glenn were not a party. FED. R. CIV. P. 19(a)(1)(A); *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880–81 (5th Cir. 1987) (Rule 19 does not require joinder of joint tortfeasors, principal and agent, or contributors to the award).

extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

The Due Process Clause requires a nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has "continuous and systematic contacts" with the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific

or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

**B.    Application**

Glenn's contacts with Texas can be summarized as follows:

(1)   Glenn traveled to 360 Mortgage's Austin office on two occasions: once prior to being hired, and once for training;

(2)   Glenn communicated with Texas-based 360 Mortgage employees, and accessed 360 Mortgage's Texas-based servers, in her daily work for the company, and particularly to access 360 Mortgage's list of approved brokers, which Glenn allegedly misappropriated;[4] and

(3)   Glenn's employment contract contained a Texas choice-of-law clause.

360 Mortgage asserts these contacts are sufficient to confer both general and specific personal jurisdiction over Glenn. The Court disagrees.

Glenn's contacts with Texas do not support the exercise of general jurisdiction. As the Fifth Circuit has explained, the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (internal quotation marks omitted). Glenn has traveled to

---

[4] In fairness to 360 Mortgage, this is a significantly truncated description. 360 Mortgage's Response [#28] dedicates a full twenty pages to describing 360 Mortgage's business in great detail, including breaking out individual business functions (e.g., appraisal, reimbursement) coordinated out of 360 Mortgage's Austin office, with which Glenn would interact in her normal course of business.

Texas on only two occasions. Although she worked for a Texas-based company, her work was exclusively performed remotely in North Carolina. Glenn did not live in Texas, own property in Texas, spend any significant amount of time in Texas, or do business with Texas residents. Her work consisted of identifying, recruiting, and working with mortgage brokers in North Carolina.

The Fifth Circuit has held personal jurisdiction could not be exercised over defendants with far more significant interactions with this state. *See, e.g., id.* at 612 (companies which sold "approximately $140,000 of goods in a five-year time period to Texas customers," sent employees to conventions in Texas, purchased millions of dollars of goods from Texas vendors, and employed two Texas residents who worked remotely from Texas did not have continuous and systematic contacts with Texas); *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (company whose shipments to and from Texas and sales staff in the state made its contacts "in some sense, 'continuous and systematic,'" was nevertheless not subject to general personal jurisdiction in the state). The same result follows here. *See Wheel-Source, Inc. v. Gullekson*, No. 3:12-CV-1500-M, 2013 WL 944430, at *4 (N.D. Tex. Mar. 12, 2013) (holding individual defendant who "work[ed] remotely for a Texas company, regularly communicated via phone and email with Wheel-Source, a Texas resident, and sent work orders to Texas" did not have sufficient contacts to justify exercise of general personal jurisdiction); *Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 399–402 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (individual defendant who entered into multiple employment contracts with Texas-based companies and routinely accessed confidential information stored on Texas-based servers not subject to general personal jurisdiction in Texas).

Glenn's contacts with Texas also do not support the exercise of specific jurisdiction. As the Fifth Circuit has repeatedly held, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Similarly, the "exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* at 312. Glenn signed an employment agreement with a national company headquartered in Texas, and worked for that company exclusively in North Carolina. Glenn's work with brokers in North Carolina would of course be meaningless if 360 Mortgage's other employees in Texas did not work to approve the brokers or fund their loans, but the same would be true if 360 Mortgage happened to be headquartered in Alaska or Maine. Glenn, who worked exclusively in North Carolina, cannot be said to have purposefully availed herself of the benefits and protections of Texas law simply by virtue of her emails and phone calls to Texas coworkers. "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Id.*; *see also Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 483 (Tex. App.—Dallas 2003, no pet.) ("[T]he mere fact that Gustafson was employed by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas.").

This conclusion is bolstered by the generally irrelevant nature of 360 Mortgage's location in and operation in Texas to the claims asserted in this case. Glenn is accused of misappropriating a list of North Carolina mortgage brokers and using those contacts to funnel business in North Carolina away from 360 Mortgage and to Stonegate. While the effects of Glenn's alleged misconduct will in some strict sense be "felt" by 360 Mortgage in Texas, the wrongful conduct and the injury are

-7-

centered in North Carolina. *See Gustafson*, 118 S.W.3d at 483–84 (Michigan-based employee who allegedly misappropriated Texas-based company's information and provided it to Michigan-based competitor not subject to specific jurisdiction in Texas); *see also Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524, 530 (Tex. App.—Dallas 2007, no pet.) (employee of Texas-based company who worked exclusively in Pennsylvania and allegedly misappropriated trade secret information not subject to personal jurisdiction in Texas; employee's "alleged liability did not arise from . . . activity conducted within Texas"). Glenn's "contacts with Texas relate only superficially" to her employment arrangement with 360 Mortgage. *Wheel-Source*, 2013 WL 944430, at *6. Because Glenn's alleged misconduct occurred in North Carolina where she exclusively worked,[5] her superficial contacts with Texas "are attenuated or fortuitous, as opposed to purposeful," and therefore fail to support an exercise of specific jurisdiction. *Id.*; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) (affirming dismissal based on lack of personal jurisdiction where "the 'potential' injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there"). As the Fifth Circuit recognized in *Moncrief*, "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." 481 F.3d at 312.

---

[5] The parties dispute whether Glenn obtained the contact list from 360 Mortgage's servers in Austin or locally from the email software on her laptop in North Carolina. This is a fine distinction, and ultimately one without a difference. There is no dispute the contact information contained in the list could be found on 360 Mortgage's servers, and Glenn initially accessed those servers to obtain the information, even if she later transcribed the contacts into a personal email list as opposed to literally copying the file from 360 Mortgage's servers. The import of Glenn's alleged conduct is that she acted from North Carolina to obtain contact information for North Carolina mortgage brokers to share with Stonegate in North Carolina and develop Stonegate's business in North Carolina.

The handful of other contacts Glenn has with Texas are too insignificant to support specific jurisdiction. Glenn's two brief trips to the Lone Star State are minor contacts, and wholly unrelated to 360 Mortgage's present allegations. The Texas choice-of-law clause in Glenn's employment agreement is not entitled to special weight; it is "yet one more of several contacts, which taken in their totality are insufficient to support personal jurisdiction." *Stuart v. Spademan*, 772 F.3d 1185, 1195 (5th Cir. 1985). Notably, the employment agreement does *not* contain a forum-selection clause, which might have effectively put an end to much of the procedural wrangling in this case. Finally, given the dearth of meaningful Texas contacts and the natural connection of the parties' dispute to North Carolina, exercising personal jurisdiction over Glenn in Texas would be unreasonable. *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("In conducting the fairness inquiry, we examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."). The Court therefore GRANTS Glenn's motion to dismiss for lack of personal jurisdiction.

## II. Motion to Transfer Venue

Stonegate and Glenn both seek to transfer this case to the United States District Court for the Eastern District of North Carolina, Raleigh Division.

### A. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate

motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313–15 (5th Cir. 2008) (internal quotation marks omitted).

The preliminary question in a motion for transfer of venue is whether the suit could have been filed originally in the destination venue. *Id.* at 312. After determining the suit could have been filed in the destination venue, the Court must next focus on whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various private and public interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).[6]

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or

---

[6]Although *Gilbert* dealt with *forum non conveniens*, the Fifth Circuit applies the "*Gilbert* factors" in the § 1404(a) context. *See In re Volkswagen of Am.*, 545 F.3d at 314 n.9.

-10-

Case 5:14-cv-00310-F   Document 51   Filed 05/19/14   Page 10 of 16

exclusive"; indeed, the Fifth Circuit has noted "'none . . . can be said to be of dispositive weight.'" *In re Volkswagen of Am.*, 545 F.3d at 313–15 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). Despite the wide array of private and public concerns, a court must engage in a "flexible and individualized analysis" in ruling on a motion to transfer venue. *Stewart*, 487 U.S. at 29.

Though the above is similar to the standard in the *forum non conveniens* context, § 1404(a) requires a lesser showing of inconvenience. *In re Volkswagen of Am.*, 545 F.3d at 314. As such, the movant need not show the *Gilbert* factors *substantially* outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one. *See id.* Nonetheless, as the Supreme Court has cautioned, while the movant's burden is lessened, the plaintiff's choice of venue is still to be considered. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Accordingly, the Fifth Circuit's rule is that while the plaintiff's choice of venue is not a factor under *Gilbert*, it places a "significant" burden of proof upon the movant to "show good cause for the transfer." *In re Volkswagen of Am.*, 545 F.3d at 314 n.10. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

**B.     Application**

As an initial matter, this case could have been brought in federal court in North Carolina. The Eastern District of North Carolina, where Glenn resides, is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and venue is therefore proper in that district. 28 U.S.C. § 1391(b)(2). Although 360 Mortgage suggests there are "significant questions" whether Stonegate is subject to personal jurisdiction in North Carolina, the Court

concludes Stonegate's business activities in North Carolina—at least with respect to Glenn and the claims asserted by 360 Mortgage—fairly establish personal jurisdiction may be exercised over Stonegate by the federal court in North Carolina. 360 Mortgage's concern that an Indiana forum-selection clause in the Stonegate–Glenn employment agreement would preclude suit in North Carolina is misplaced. The contract, which obviously does not bind non-party 360 Mortgage, is expressly directed at disputes regarding the employment agreement itself. *See* Pl.'s Resp. [#28-4], Ex. D, at 3 (forum-selection clause covering "[a]ny action to enforce, challenge or construe the terms or making of this Agreement or to recover for its breach"). This lawsuit does not involve a dispute between Stonegate and Glenn regarding their employment agreement, but rather alleges Stonegate and Glenn conspired to misappropriate 360 Mortgage's trade secrets in order to harm 360 Mortgage's business. Because this action could have been brought in North Carolina, the Court proceeds to an analysis of the *Gilbert* factors.

The private interest factors favor transfer to North Carolina. With respect to access to sources of proof, the corporate parties' documents are likely to be located in their respective headquarters in Texas and Indiana. Any documents or other materials Glenn has in her possession will be in North Carolina. Relevant documents concerning Glenn's business activities with brokers in North Carolina will also be located in North Carolina. The parties can access their own documents with the same ease regardless of the chosen forum, though North Carolina is a shorter distance for both defendants to transport documents than Texas would be. *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (reiterating "the question is *relative* ease of access, not *absolute* ease of access"). Non-party documentation, essentially all of which is likely to exist in North Carolina, weighs in favor of transfer. This is particularly true given 360 Mortgage's suggestion that there are potentially hundreds

-12-

Case 5:14-cv-00310-F   Document 51   Filed 05/19/14   Page 12 of 16

of relevant mortgage brokers and loan officers with whom Glenn did business on behalf of either 360 Mortgage or Stonegate. Pl.'s Resp. [#38], at 27 (suggesting the court "will be dealing with scores of mortgage brokers and possibly over a hundred loan officers," none of whom reside in Texas). It will be more convenient for those disparate sources to provide books, records, and other information in their home state than in Texas.

The North Carolina court is also a more convenient venue because it will enjoy absolute subpoena power over many of the material, non-party witnesses with whom Glenn did business in North Carolina. *See In re Volkswagen of Am.*, 545 F.3d at 316; *Tex. Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 641 (E.D. Tex. 2011) ("This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have absolute subpoena power." (internal quotation marks omitted)). Stonegate has provided affidavits from several brokers who indicate they would not voluntarily travel to Texas to provide testimony regarding their transition from working with 360 Mortgage to working with Stonegate. Def.'s Mot. to Transfer [#31], Exs. 1–3. 360 Mortgage has catalogued various *party* witnesses it anticipates will provide material testimony, but this factor is primarily concerned with *non-party* witnesses—those individuals least likely to voluntarily appear at trial. *See State Street Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994) ("[I]t is the convenience of the non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis."). Because the various brokers and loan officers located in North Carolina are not subject to absolute subpoena power in this district and may need to travel upwards of 1,000 miles to appear at trial in Austin, this factor weighs in favor of transfer. *See In re Volkswagen AG*, 371 F.3d at 204–05 (explaining "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled").

The cost of attendance of willing witnesses weighs against transfer. All of 360 Mortgage's witnesses are in Austin. Stonegate has a smaller number of potential party witnesses, many of whom are spread across the country and thus likely to be required to travel in any event. Glenn is the only obviously willing witness located in North Carolina. Given the inevitability of travel on the part of many of these witnesses, it would appear most economical to those witnesses to locate the trial in Austin.

The parties have not identified any other practical problems distinct from the facts considered under other factors. The Court holds this fourth private factor is neutral.

Turning to the public interest factors, administrative difficulties flowing from court congestion favor transfer. Counsel practicing in Austin are well aware this Court's docket is among the heaviest in the country, having the benefit of a busy and diverse civil docket in addition to a substantial criminal caseload.[7] The statistics provided by the parties suggest each of the four judges sitting in the Eastern District of North Carolina sees roughly 750 total filings per year, while each judge in this district sees closer to 1,000 filings per year.[8] It is true that the parties may reach a trial date sooner in this court than in North Carolina, assuming the parties could still reach their pending trial setting despite spending six months litigating jurisdictional issues. But the Fifth Circuit recently clarified "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax*, 720 F.3d at 289. Accordingly, this factor favors transfer.

---

[7] The geographic reach of the Western District of Texas makes apples-to-apples comparisons difficult. For example, the docket in Austin is vastly different from the docket in El Paso.

[8] Statistics are drawn from the United States District Courts National Judicial Caseload Profile, accessible at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-september-2013.pdf.

The local interest factor strongly favors North Carolina. Glenn worked exclusively in North Carolina with North Carolina brokers to originate mortgages on North Carolina properties. Texas citizens have no particular interest in resolving a dispute concerning the North Carolina business activities of a national mortgage lender who happens to be headquartered in Austin. Conversely, the citizens of North Carolina have a strong interest, as both lenders compete for business in North Carolina and are involved in the North Carolina real estate market, and Glenn is a North Carolina resident with relevant connections to local communities. *See In re Volkswagen of Am.*, 545 F.3d at 318 (local interest factor focuses on "those actually affected—directly or indirectly—by the controversies and events giving rise to a case").

The familiarity with law factor weighs against transfer. Glenn's employment agreement contains a Texas choice-of-law provision, and thus Texas law should presumably govern the contractual claims. The trade secret claims are governed by the Uniform Trade Secrets Act, adopted by both Texas and North Carolina, though more recently by Texas. Because a Texas court is likely to be more familiar with Texas law than a North Carolina court, this factor weighs against transfer.

The conflicts of laws factor is neutral, as either court will need to determine which state's law governs the tort claims asserted in this case. Because the only two choices—Texas or North Carolina—are the respective forums themselves, this factor does not weigh in favor of or against transfer.

Placing all of these factors on the scale, the Court concludes North Carolina is clearly the more convenient forum, and therefore transfer is appropriate. *See In re Volkswagen of Am.*, 545 F.3d at 314 n.10. The only connection this lawsuit has to Texas is the fact 360 Mortgage is headquartered here. All of the relevant conduct occurred in North Carolina and concerns the 360

-15-

Case 5:14-cv-00310-F   Document 51   Filed 05/19/14   Page 15 of 16

Mortgage–Stonegate rivalry in that state. Glenn's activities in North Carolina gave rise to the dispute, and a court in North Carolina should resolve it. The Court therefore GRANTS the motion to transfer.

**Conclusion**

Accordingly,

IT IS ORDERED that Defendant Lisa B. Glenn's Motion to Dismiss for Lack of Jurisdiction and Improper Venue [#6] is GRANTED;

IT IS FURTHER ORDERED that Defendant Lisa B. Glenn's Supplemental Motion to Dismiss for Lack of Jurisdiction [#18] is GRANTED;

IT IS FURTHER ORDERED that all claims against Defendant Lisa B. Glenn are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction;

IT IS FURTHER ORDERED that Defendant Stonegate Mortgage Corporation's Motion to Transfer Venue [#31] is GRANTED;

IT IS FURTHER ORDERED that Defendant Stonegate Mortgage Corporation's Motion to Dismiss for Failure to Join an Indispensable Party [#32] is DENIED;

IT IS FINALLY ORDERED that this case is TRANSFERRED to the United States District Court for the Eastern District of North Carolina, Raleigh Division.

SIGNED this the 19th day of May 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE