IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00310-F

| | |
|---|---|
| 360 MORTGAGE GROUP, LLC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| STONEGATE MORTGAGE CORP., ) | |
| Defendant. ) | |

This matter is before the court on the following motions:

(1) Motion to Withdraw as Attorney by Stonegate Mortgage Corp. ("Stonegate") [DE-153];

(2) Motion to Disqualify Counsel by 360 Mortgage Group, LLC ("360 Mortgage") [DE-170];

(3) Appeal of United States Magistrate Judge Robert B. Jones, Jr.'s Order of January 15, 2016 (the "January 2016 Order") by 360 Mortgage [DE-169];

(4) Motion to Stay by 360 Mortgage [DE-175];

(5) 360 Mortgage's Motion to Seal Exhibits 1–22 to its Motion to Disqualify Counsel [DE-173];

(6) Stonegate's Motion to Seal Exhibits 1–2 to its Reply to 360 Mortgage's Response to the Motion to Allow Withdrawal of Counsel [DE-184];

(7) Stonegate's Motion to Seal Exhibits 1–2 to its Response in Opposition to 360 Mortgage's Motion to Disqualify Counsel [DE-192]; and

(8) Motion for Hearing and to Strike by Stonegate [DE-200].

The relevant procedural history has been adequately recited in previous orders. *See, e.g.*, January 2016 Order [DE-162]. The court presumes the parties' familiarity with those orders and summarizes as to each pending motion the background essential to the resolution thereof.

## I. MOTION TO WITHDRAW AND MOTION TO DISQUALIFY

On December 22, 2015, Stonegate requested the withdrawal from representation of Local Civil Rule 83.1 counsel Reid L. Phillips, Thomas Glenn Varnum, Steven Wilson Quick, and the law firm of Brooks, Pierce, McLendon, Humphrey & Leonard LLP. [DE-153]. That same day, attorneys Jenna F. Butler, Caroline Batchelor McLean, Gary J. Rickner, and Devon D. Williams, all of the law firm of Ward and Smith, P.A. ("Ward and Smith"), entered notices of appearance on behalf of Stonegate. [DE-155, -156, -157, -158]. 360 Mortgage opposes the motion and also seeks disqualification of Ward and Smith because of the firm's representation of Stonegate's employee and former co-defendant, Lisa Glenn.[1] *See* 360 Mortgage Mot. Opp. [DE-170]. The court's analysis centers on the motion to disqualify as its ruling thereon is determinative of Stonegate's withdrawal motion.

As a preliminary matter, Stonegate, relying on *United States v. Clarkson*, 567 F.2d 270, (4th Cir. 1977), argues that 360 Mortgage lacks standing to seek disqualification of Ward and Smith. In *Clarkson*, the Fourth Circuit observed that "any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court." *Id.* at 271–72 n.1. According to Stonegate, *Clarkson* requires "actual[] and full[]" awareness of the facts relevant to the relationships between Ward and Smith, Glenn, and Stonegate—an awareness 360 Mortgage lacks. Resp. Opp'n Mot. Disqualify [DE-191] at 12.

The court finds Stonegate's interpretation of *Clarkson* too narrow and further finds that 360 Mortgage has standing to move for disqualification. Here, 360 Mortgage is aware of the following facts: (1) Ward and Smith previously represented (and continues to represent) Glenn in

---

[1] Lisa Glenn was originally named as a defendant at this case's inception in Texas. [DE-1]. Glenn was dismissed for lack of personal jurisdiction and the case transferred to this district. [DE-51]. After the transfer, Glenn was added back into the case as a defendant. [DE-72]. In September 2015, the court allowed 360 Mortgage's motion to dismiss Glenn as a party. [DE-141].

2

this matter; (2) Stonegate seeks representation by Ward and Smith in this matter; and (3) Glenn and Stonegate may at some point in the litigation become adverse to one another. That 360 Mortgage lacks knowledge of every detail regarding the relationship between Glenn and Stonegate is of no moment. The court turns now to the merits of the disqualification motion.

Under North Carolina's Rules of Professional Conduct, lawyers are prohibited from representing clients where there is a concurrent conflict of interest. A concurrent conflict exists if "the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." N.C. R. Prof'l Conduct 1.7(a)(2).

According to 360 Mortgage, Glenn's February 7, 2014 deposition testimony so dramatically differs from testimony by representatives of Stonegate, taken April 21 and 22, 2014, that the two must necessarily be adversarial. Specifically, 360 Mortgage contends that Glenn's and Stonegate's testimony with regard to when, and under what circumstances, Glenn became employed with Stonegate are so at odds that Ward and Smith, on behalf of Stonegate, will be forced to cross-examine its own client, Glenn. Further, 360 Mortgage observes that, with the possibility of perjury charges looming against Glenn, it may be in her best interest to recant her deposition testimony, to the detriment of Stonegate. Thus, because the trial will likely involve testimony pitting Glenn and Stonegate against each other, 360 Mortgage argues that Ward and Smith cannot provide adequate representation to both. Stonegate disputes the existence of any conflict of interest.[2]

---

[2] Stonegate argues further that to the extent a conflict exists, Lisa Glenn and Stonegate consented in writing to concurrent representation by Ward and Smith after consultation with independent counsel, as allowed under Rule 1.7(b). Because the court finds that Stonegate does not meet its burden under Rule 1.7(a), it does not consider the exception under Rule 1.7(b).

3

"[D]isqualification of a litigant's chosen counsel for violation of an ethical canon . . . may not be rested on *mere speculation* that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992) (emphasis added). Here, 360 Mortgage's motion to disqualify is premised on its hypothesis as to the direction of its opponent's defense. This conjecture is insufficient to support such an extreme result. Moreover, the ethical obligations of counsel and the availability of sanctions for ethical violations is a sufficient deterrent to misconduct, especially once the requirements of professional responsibility have been highlighted by a motion to disqualify. *See id.* at 146 ("Particularly here, with the fat of possible specific ethical misconduct now formally in the fire, it is hard to imagine that it would occur—even if, as we do not suggest, there were any predisposition in that direction."). The court is confident that the instant motion to disqualify will serve to heighten Ward and Smith's awareness of and attention to its ethical obligations.

## II. APPEAL OF THE JANUARY 2016 ORDER

The January 2016 Order addresses Stonegate's motion to extend discovery deadlines and a variety of discovery disputes. 360 Mortgage appeals two aspects of the Order: (1) Judge Jones's directive that 360 Mortgage produce documents responsive to Stonegate's Request for Production Number 4 ("RFP 4"), and (2) the extension of discovery deadlines.

In its motions before Judge Jones, Stonegate argued that 360 Mortgage's failure to provide responsive discovery prevented Stonegate from taking depositions of key witnesses within the discovery deadlines. Finding the documents Stonegate sought relevant, Judge Jones ordered 360 Mortgage to produce them. He also extended case deadlines by 90 days to allow for

4

production of those documents and depositions. He did not re-open discovery for any other purpose, and specifically provided that no further written discovery requests would be served.

## A. Standard of Review

A district court judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," with the exception of certain specified dispositive motions. 28 U.S.C. § 636(b)(1)(A).[3] A magistrate judge's decision under this section may be appealed to the district court to determine whether it is "clearly erroneous or contrary to law." *Reddick v. White*, 456 F. App'x 191, 192 (4th Cir. 2011) (unpublished) (quoting § 636(b)(1)(A) and citing Fed. R. Civ. P. 72(a)). "A factual finding is clearly erroneous when [a court is] 'left with the definite and firm conviction that a mistake has been committed.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). The "contrary to law" standard permits plenary review of legal conclusions. *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011). At the same time, greater deference is accorded to magistrate judges' decisions on discovery and scheduling disputes. *See, e.g.*, *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010) ("Indeed, the fact-specific character of most discovery disputes and the discretionary standard for resolution of discovery disputes under the Federal Rules suggest that magistrate judges ordinarily have ample discretionary latitude in disposition of those matters.").

## B. Request for Production No. 4

On May 7, 2015, Stonegate served RFP 4, requesting:

---

[3] A magistrate may not decide "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

5

> All Documents that discuss, relate to and/or evidence communications with any of the Brokers, loan officers, or other individuals or entities included in Exhibit 1 attached to 360 Mortgage's Second Requests for Production to Stonegate from June 2010 to the present, including, but not limited to, all applications from any such brokers or entities and all lists or compilations of data relating to or including any such brokers or entities.

[DE-116-10] at 2.

On June 8, 2015, 360 Mortgage responded to RFP 4, indicating "with respect to email communications [360 Mortgage] will agree to search through email files once suitable and agreeable search terms are identified by Stonegate to allow a reasonable search." *Id.*

In a letter dated July 14, 2015 (the "July 2015 Letter"), Stonegate provided a list of search parameters it believed would provide results sufficiently responsive to RFP 4. [DE-103-1]. Stonegate requested that 360 Mortgage search the bodies of emails and attachments within the accounts of several named individuals using specific search terms. For the next month, Stonegate and 360 Mortgage communicated back and forth about various discovery issues, including RFP 4.

Finally, on August 7, 2015, 360 Mortgage informed Stonegate that the search parameters in the July 2015 Letter yielded results 360 Mortgage believed to be superfluous. Thus, 360 Mortgage offered to conduct a much narrower search using the search terms provided by Stonegate, but limited to the "to, from, or subject line" of the email accounts provided by Stonegate. [DE-98-10] at 3.

Stonegate responded the same day, indicating that 360 Mortgage's proposal to further narrow the search was unacceptable because such a search would fail to yield relevant email discussions relating to the requested search terms in many instances. Stonegate insisted that the search must include the body of emails and attachments if it was to be responsive to RFP 4. [DE-98-11].

6

Ultimately, Stonegate filed a motion to compel, on which Judge Jones conducted a hearing on January 14, 2016.[4] Pertinent here, the parties debated the relevance of RFP 4 relative to the burden of production on 360 Mortgage. Stonegate explained that RFP 4 specifically sought information related to 360 Mortgage's damages calculations and Stonegate's affirmative defense that 360 Mortgage failed to mitigate its damages. Finding Stonegate's argument persuasive, Judge Jones ordered 360 Mortgage to produce the documents according to the search parameters set out in Stonegate's July 2015 Letter.

According to 360 Mortgage, the January 2016 Order impermissibly required 360 Mortgage's compliance with the July 2015 Letter. Because Stonegate's proposed search parameters were not part of its original RFP 4, but were instead the result of a compromise offer made during the meet-and-confer process, 360 Mortgage argues that the January 2016 Order "bypasses the dictates of the federal rules" and deprives 360 Mortgage of the opportunity to file formal objections "for the obvious reason that [the July 2015 Letter] was not a request for production under FRCP 34." [DE-169] at 14. According to 360 Mortgage, "[c]ase law soundly rejects allowing a court to order compliance with informal letters and offers of compromise." *Id.* at 15 (citing *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2012 WL 359877 (D. Kan. Feb. 2, 2012); *James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693 (S.D. Fla. 2006)).

The cases cited by 360 Mortgage are factually distinguishable from the instant case. In *Firestone*, the court held that a motion to compel deposition was improper because, although the movant had sent a series of emails suggesting its intent to depose a witness, the movant had never formally noticed a deposition under Rule 30(b)(1). *Firestone*, 2012 WL 359877, at *3. In

---

[4] The hearing addressed several discovery issues contained in Stonegate's motion to compel as well as a motion to compel filed by 360 Mortgage. Only RFP 4 is relevant to the discussion here.

7

*James*, the court refused to compel production of documents where the movant had requested the documents in a letter, but had never served a formal Request for Production. *James*, 240 F.R.D. at 695. Here, however, the motion to compel was based on a formal Request for Production properly served on 360 Mortgage.

That Stonegate, at 360 Mortgage's insistence, offered to accept a narrower response than it originally requested does not negate its compliance with Rule 34 in serving formal Requests for Production. Thus, even assuming 360 Mortgage correctly states the law in regard to "informal letters and offers of compromise," the case here stands on a different footing. In particular, Judge Jones simply ordered 360 Mortgage to respond to a more narrowly defined version of the original RFP 4. *See, e.g., Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (holding the magistrate judge appropriately "narrowed and defined" the RFP request for "[a]ll financial incentive agreements which in any way relate to profitability and/or claim performance" to "documents relating to profit-sharing or profits" (alteration in original)).

The audio recording of the January 14, 2016 hearing confirms that Judge Jones appropriately weighed the "burden or expense of proposed discovery" against the relevance and necessity of the information in an effort to "consider the opportunities for reducing the burden or expense of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. The court finds that the Order compelling production of documents responsive to RFP 4 was neither clearly erroneous nor contrary to law.

### C. Motion to Extend Deadlines

360 Mortgage also challenges Judge Jones's extension of case deadlines. 360 Mortgage contends that Stonegate has not shown "good cause" as required for amending the scheduling

order in this case. Specifically, 360 Mortgage points out that Stonegate failed to diligently pursue discovery early in the case. Judge Jones conducted a telephonic hearing on September 2, 2015, to discuss Stonegate's Motion to Extend. At that hearing, the parties addressed Stonegate's diligence. Then, at the January 14, 2016 hearing, Judge Jones again heard arguments relating to the motion to continue.

After listening to hours of argument on this issue, Judge Jones reopened discovery to allow production of the disputed documents and taking of depositions. The transcript of the September 2, 2015 telephonic hearing and the audio recording of the January 14, 2016 hearing reveal that Judge Jones considered the entire history of the case and the behavior of all parties and found good cause for the extension.

As it was neither clearly erroneous nor contrary to law, the January 2016 Order is AFFIRMED.

### D. Joint Status Report

The January 2016 Order set the following deadlines: all discovery to be completed by April 15, 2016; all potentially dispositive motions to be filed by May 15, 2016; and trial during the court's September 26, 2016 term of court. Thus, all discovery in this matter should now be complete, and all dispositive motions submitted. The court believes the parties here would benefit from further mediation. Therefore, the parties are ORDERED to submit a joint status report, no later than June 10, 2016, setting out their positions regarding the prospects for effective mediation of this matter as well as a proposed timeline for such mediation.

### III. MOTIONS TO SEAL

Three motions to seal are currently pending in this matter: (1) 360 Mortgage's unopposed Motion to Seal Exhibits 1–22 to its Motion to Disqualify Counsel [DE-173]; (2) Stonegate's

9

unopposed Motion to Seal Exhibits 1–2 to its Response in Opposition to 360 Mortgage's Motion to Disqualify Counsel [DE-192]; and (3) Stonegate's Motion to Seal Exhibits 1–2 to its Reply to 360 Mortgage's Response to the Motion to Allow Withdrawal of Counsel [DE-184].

### A. Standard for Motions to Seal

A district court must follow certain procedural requirements before sealing a motion. First, the court must give the public adequate notice of and an opportunity to object to the proposed sealing. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253–54 (4th Cir. 1988). If the court decides to seal a document, it must then state its reasons supported by specific factual findings, as well as its reasons for rejecting alternatives to sealing. *Id.*

Substantively, the court's decision on a motion to seal is guided by its determination of the source of the public's right to access the proposed sealed document. The public's right to access judicial records and documents is presumed by both the common law and the First Amendment. *Id.* at 253. "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (1988) (internal citations omitted). The presumption of access may be overcome, under the common law, "if competing interests outweigh the interest in access." *Id.* Under the First Amendment, on the other hand, "access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* (citing *Rushford*, 846 F.2d at 253).

For a right of access to exist under either standard, however, the document must first qualify as a judicial record. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). The Fourth Circuit defines a judicial record as a document that

10

"play[s] a role in the adjudicative process, or adjudicate[s] substantive rights." *Id.*; *see also In re Policy Mgmt. Sys. Corp.*, Nos. 94-2254, 94-2341, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (holding that "a document must play a relevant and useful role in the adjudication process" for a presumption of access to attach). Thus, a document "filed with the objective of obtaining judicial action or relief" is a judicial document, subject to, at a minimum, the common law presumption of access. *In re U.S.*, 707 F.3d 283 at 291.

### B. Discussion

#### 1. The exhibits at issue here are judicial documents.

At the outset, the court finds that each of the proposed sealed exhibits in this matter is a judicial document, subject to at least the common law presumption of access. The parties submitted the proposed sealed exhibits to facilitate the court's adjudication of the parties' dispute as to Ward and Smith's representation of Stonegate. Accordingly, each of the documents "play a role in the adjudicative process." *In re U.S.*, 707 F.3d at 290; *see, e.g.*, *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005) ("[M]otions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties . . . ."); *see also F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994); *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). The court will now consider the source of the presumption of access to these judicial documents.

#### 2. The First Amendment presumption of access attaches to the documents at issue.

To determine whether the more stringent First Amendment right of access applies, the court employs the two-pronged "experience and logic" test. Under the experience prong, the court considers whether the proceeding before the court is the type that traditionally is open to the public. *See In re U.S.*, 707 F.3d 283 at 291 (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60,

11

64 (4th Cir. 1989)). Under the logic prong, the court determines whether the proceeding benefits from public access. *Id.* (citing *Goetz*, 886 F.2d at 64). Here, the court finds both prongs counsel in favor of a First Amendment presumption of access to the documents.

First, pretrial civil proceedings are generally open to the public. *See, e.g., Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 580 (4th Cir. 2004) (noting that "proceedings in civil cases are traditionally open . . . and 'in some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases.'" (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979))). Moreover, the specific proceedings currently before the court— motions to allow withdrawal of counsel and to disqualify counsel—have no history of secrecy. *Cf. A.C.L.U. v. Holder*, 652 F. Supp. 2d 654, 662 (E.D. Va. 2009), *aff'd*, 673 F.3d 245 (4th Cir. 2011) (finding no First Amendment right of access to sealed *qui tam* complaints because "the government's investigation and evaluation of the relator's allegations"—analogous to a grand jury proceeding—"are not the type of processes that historically have been open to the public").

Second, the pending motions to allow withdrawal of counsel and to disqualify counsel seek to determine the propriety of Ward and Smith's representation of Stonegate. They are, in essence, a dispute over legal ethics. Transparency in this arena is undoubtedly beneficial. Despite the important role lawyers play in society's essential functions,[5] the legal profession is largely self-regulating. On the relatively rare occasion the court is called to pass on questions of legal ethics, the public's ability to review the decisionmaking process serves to increase confidence in the judicial system, and to improve the accountability of individual members of the bar.

---

[5] *See, e.g., In re Snyder*, 472 U.S. 634, 644 (1985) ("As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers. Admission creates a license not only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms.").

12

Thus, the court finds both prongs of the "experience and logic" test satisfied—the First Amendment presumption of access attaches to the exhibits at issue here. To overcome this presumption and seal the documents, the movants must demonstrate that their requested relief is narrowly tailored to accomplish a compelling government interest.[6]

### 3. Analysis

A party moving to seal a document must submit a supporting memorandum specifying:

(i) the exact document or item, or portions thereof, for which filing under seal is requested;
(ii) how such request to seal overcomes the common law or the First Amendment presumption to access;
(iii) the specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;
(iv) the reasons why alternatives to sealing are inadequate; and
(v) whether there is consent to the motion.

Section T, Electronic Case Filing Administrative Policies and Procedures Manual. The motions to seal currently before the court exhibit varying degrees of compliance with this requirement.

Before turning to the individual motions to seal, the court observes that each of the three motions indicate that the proposed sealed documents are subject to a Confidentiality and Protective Order [DE-23], entered on the joint motion of the parties. The court notes, however, that the parties may not, by agreement, bypass the presumption of public access to judicial documents. *See Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 729 (M.D.N.C. 2013) (citing *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 437–38 (D. Md. 2006)). Rather, "the

---

[6] The court acknowledges a previous order in this case finding documents related to a motion to compel discovery subject to only the common law presumption of access. *See* Order of December 14, 2015 [DE-152] at 7–8. The instant motions to seal are distinguishable, however, because they relate not to a discovery motion, but to motions to allow withdrawal of counsel and to disqualify counsel. Because the discovery process is not typically open to the public, documents related to a discovery dispute fail the first prong of the experience and logic test. Thus, they are not subject to the First Amendment presumption of access. To the extent any confusion remains, the court clarifies that the source of the presumption of access that attaches to judicial documents is not determined by the dispositive or non-dispositive character of the documents, but by application of the experience and logic test. *See In re U.S.*, 707 F.3d at 291 (citing *Goetz*, 886 F.2d at 64).

13

parties must show significant countervailing interests that outweigh the public's interest in openness." *Id.*

### i. 360 Mortgage's Motion to Seal Exhibits 1–22 to its Motion to Disqualify Counsel [DE-173]

360 Mortgage moves to seal twenty-two exhibits to its Motion to Disqualify Counsel on the grounds that the exhibits "contain confidential and proprietary information of [360 Mortgage], that provide Plaintiff with an extremely important competitive advantage in its operations." 360 Mortgage Mem. Support Mot. Seal [DE-174] at 5. 360 Mortgage contends that "there are no alternatives to sealing." *Id.* at 6.

The court finds 360 Mortgage's explanation for its blanket request to seal all twenty-two exhibits insufficient. Generally speaking, the need to keep proprietary business information confidential is often a sufficiently compelling justification for sealing judicial documents. *See, e.g., Morris v. Cumberland Cty. Hosp. Sys., Inc.*, No. 5:12-CV-629-F, 2013 WL 6116861, at *3 (E.D.N.C. Nov. 13, 2013) (observing that "the need to keep confidential proprietary business information or trade secrets may constitute a 'higher value' that can overcome both the common law and the First Amendment rights of access in appropriate circumstances"). Here, however, 360 Mortgage fails to indicate, *with specificity*, the "qualities of the material at issue which justify sealing such material" as required under Section T of the Policy Manual. From the court's review of the exhibits, there appear to be a mixture of documents, some that contain sensitive information and some that do not, and 360 Mortgage's memorandum in support is too vague to aid the court in its decision. "[T]he [c]ourt is not in a position to speculate about what is and is not confidential, nor is it the [c]ourt's obligation to fill in the gaps . . . from its own experience or imagination." *Cochran*, 931 F.Supp.2d at 730. In addition, 360 Mortgage's memorandum fails to explain why alternatives to sealing are inadequate. At least some of the proposed sealed exhibits,

14

however, appear to be redactable. Again, the court lacks the information necessary to make an informed decision on the matter. Accordingly, the motion is DENIED without prejudice to renew.

### ii. Stonegate's Motion to Seal Exhibits 1-2 to its Reply to 360 Mortgage's Response to the Motion to Allow Withdrawal of Counsel [DE-184]

Stonegate moves to seal two exhibits to its Response in Opposition to 360 Mortgage's Motion to Disqualify Counsel on the grounds that they contain "confidential and proprietary information regarding the employment relationship between [Stonegate] and a now non-party, Glenn." Stonegate Mem. Support Mot. Seal [DE-185] at 6. Stonegate argues that its "legitimate desire to protect the confidentiality of its business decisions, its employment relationships, and the privacy rights of [Stonegate] and its employee" overcome the presumed First Amendment right of access to the documents. *Id.*

The need to keep proprietary business information confidential has frequently been found sufficient to outweigh the public's interest in access to judicial documents. *See, e.g.*, *Morris*, 2013 WL 6116861, at *3. Further, individuals' privacy interests in their own personal financial information have been found sufficiently compelling to overcome the First Amendment presumption of access. *See, e.g.*, *Wolfe v. Green*, No. Civ. A. 2:08-01023, 2010 WL 5175165, at *3 (S.D. W. Va. Dec. 15, 2010) (holding that redaction was appropriate for documents containing plaintiff's medical history and finances).

Having found that Stonegate's motion to seal presents a compelling interest, the court now turns to whether the relief sought is narrowly tailored. Stonegate argues that alternatives to sealing—*i.e.*, redaction—would be inadequate in this case. The documents at issue here are an employment agreement between Stonegate and Lisa Glenn and an amendment to that agreement. Personal information related to Lisa Glenn's employment, as well as information related to

15

Stonegate's business practices, completely permeates the documents. The court agrees that redaction would be an ineffective alternative.

360 Mortgage objects to Stonegate's motion to seal, arguing that substantially similar documents have been publicly filed in this case. While it is true that other employment agreements are on the public record, the particular employment agreements at issue here are not. The terms contained in the publicly filed agreements and the proposed sealed exhibits are not identical. This is not a situation in which a party is moving to seal information that is already publicly available. Therefore, this argument is unavailing.

Stonegate's Motion to Seal Exhibits 1–2 to its Reply to 360 Mortgage's Response to the Motion to Allow Withdrawal of Counsel [DE-184] is ALLOWED.

### iii. Stonegate's Motion to Seal Exhibits 1–2 to its Response in Opposition to 360 Mortgage's Motion to Disqualify Counsel [DE-192]

Stonegate also moves to seal two exhibits to its Reply to 360 Mortgage's Response to the Motion to Allow Withdrawal of Counsel. The two exhibits contain excerpts from depositions of Jeffrey Lochmandy, Stonegate's Rule 30(b)(6) representative, and Lisa Glenn. Stonegate argues that the deposition excerpts contain "information concerning specific loan files, financial data, and the business models and strategies of [Stonegate] and Plaintiff." Mem. Support Mot. Seal [DE-190] at 6.

Stonegate's motion suffers from the same flaw as 360 Mortgage's Motion to Seal, discussed in section III.B.3.i. above. Large portions of the deposition excerpts appear to contain non-sensitive information, and the court is not in a position to guess which portions are confidential and which are not. Further, like the documents proposed sealed by 360 Mortgage, the deposition excerpts here appear to be redactable. Accordingly, the motion is DENIED without prejudice to renew.

16

## IV. MOTION TO STRIKE

Stonegate moves to strike 360 Mortgage's Opposition to Motion to Seal [DE-194] as untimely. Mot. Strike [DE-200]. As Stonegate indicates, any response to its Motion to Seal was due on or before March 14, 2016. 360 Mortgage, however, filed its response in opposition at 12:04 a.m. on March 15, 2016—a full four minutes late. Further, Stonegate points out that this is not the first occasion on which 360 Mortgage has displayed a "disregard for the authority of both the federal rules and local rules of this district," Mem. Supp. Mot. Strike [DE-201] at 6, by filing untimely documents. Previously, 360 Mortgage has filed documents as late as an hour after its midnight deadline.

The preamble to the North Carolina Rules of Professional Conduct cautions that "[t]he legal system provides a civilized mechanism for resolving disputes, but only if the lawyers themselves behave with dignity." The parties here would do well to seriously consider that admonition. The court finds 360 Mortgage's four-minute transgression ultimately forgivable. Stonegate's Motion to Strike [DE-200] is DENIED.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) The Motion to Withdraw as Attorney [DE-153] is ALLOWED;

(2) The January 2016 Order [DE-162] is AFFIRMED;

(3) The Motion to Disqualify Counsel [DE-170] is DENIED;

(4) 360 Mortgage's Motion to Seal [DE-173] is DENIED WITHOUT PREJUDICE;

(5) The Motion to Stay [DE-175] is DISMISSED as moot;

(6) Stonegate's first Motion to Seal [DE-184] is ALLOWED;

(7) Stonegate's second Motion to Seal [DE-192] is DENIED WITHOUT PREJUDICE;

(8) The Motion for Hearing and to Strike [DE-200] is DENIED; and

(9) The parties shall submit a joint status report as described in section III.D. of this Order **no later than June 10, 2016**.

SO ORDERED.

This, the 25 day of May, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge