IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00310-F

| | |
|---|---|
| 360 MORTGAGE GROUP, LLC, <br> Plaintiff, | ) <br> ) <br> ) |
| v. | ) **ORDER** |
| | ) |
| STONEGATE MORTGAGE CORP., <br> Defendant. | ) <br> ) <br> ) |

This matter is before the court on Defendant Stonegate Mortgage Corporation's motion [DE-210] for summary judgment. For the reasons stated below, the motion is ALLOWED.

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff 360 Mortgage Group, LLC ("360 Mortgage") initiated this action on September 20, 2013, by a complaint filed in Texas's 345th Judicial District against Defendants Stonegate Mortgage Corporation ("Stonegate") and Lisa Glenn—a former employee of 360 Mortgage. [DE-1]. The case was removed to the United States District Court for the Western District of Texas on October 13, 2013. *Id.* On May 19, 2014, that court dismissed Glenn for lack of jurisdiction and transferred the case to this district. [DE-51, -52]. Glenn was added back into the case as a party defendant on November 14, 2014, and was voluntarily dismissed on October 9, 2015. [DE-72, -141]. Stonegate moved for summary judgment on May 15, 2016. [DE-210].

## II. SCOPE OF THE EVIDENTIARY RECORD

Before the court can summarize the facts in this case, it must determine the scope of the evidentiary record.

Under Local Civil Rule 56.1(a), a movant for summary judgment must submit a Statement of Undisputed Material Facts ("SUMF") enumerating the issues on which the movant

contends there is no genuine dispute. In response, the non-movant must submit a statement responding to each of the movant's asserted facts. Local Civil Rule 56.1(a)(2). Each party must cite to admissible evidence corresponding to each fact asserted or disputed, and the cited evidence must be submitted as an appendix. With the exception of a single declaration, discussed below, the court has considered the parties' Local Civil Rule 56.1 statements and appendices in reaching its summary judgment decision.

### A. 360 Mortgage's SUMF Response

Much of 360 Mortgage's SUMF Response consists of attacks on Lisa Glenn's credibility. *See, e.g.*, SUMF Resp. [DE-231] ¶ 63 ("Insofar as Lisa Glenn's statements are cited as corroboration for this proposition, this is disputed for several reasons, including the fact that Glenn is an interested witness, given the frequent prevarications to which Glenn is prone to, her testimony as an interested witness is not accepted and must be disputed."). 360 Mortgage offers the same blanket rejection of Glenn's testimony, verbatim, throughout its SUMF Response, each time citing the declaration of Andrew WeissMalik ("WeissMalik Decl. I." or "WeissMalik's First Declaration")—360 Mortgage's Executive Vice President and COO. *See, e.g.*, SUMF Resp. ¶¶ 75, 78, 90, 92, 94, 117.

Stonegate objects to the court's consideration of WeissMalik's First Declaration[1] on the basis that it is a "sham declaration." *See* Summ. J. Reply [DE-237] at 5–6. According to Stonegate, 360 Mortgage produced WeissMalik's First Declaration in an attempt to manufacture a factual dispute. In support of this assertion, Stonegate notes WeissMalik signed the declaration on June 16, 2016, one month after the filing of the instant motion. Moreover, WeissMalik's First Declaration directly responds to Stonegate's SUMF paragraph by paragraph. Indeed, much of the

---

[1] WeissMalik submitted two declarations, both dated June 16, 2016. Stonegate's objection is limited to WeissMalik's First Declaration [DE 231-1]. *See* Summ. J. Reply [DE-237].

2

declaration makes no sense without reference to the SUMF. *See, e.g.*, WeissMalik Decl. I [DE-231-1] ¶ 7 ("The evidence referenced for this proposition does not stand for the proposition for which it has [sic] cited. Furthermore, SMC was prohibited from working with Glenn in the manner in which it did which involves the allegations in this case."); *id.* ¶ 40 ("Citations are inexact and inaccurate."); *id.* ¶ 59 ("That is simply not what the evidence or testimony is and certainly was not the case."); *id.* ¶ 122 ("The statements therein are simply not the case.").

The "sham affidavit doctrine" provides that the court, when considering a motion for summary judgment, may disregard an affidavit contradicting the affiant's prior testimony if it appears the affidavit was filed in an attempt to manufacture an issue of fact. *See, e.g., Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Howard v. Malcolm*, 658 F. Supp. 423, 428 (E.D.N.C. 1987). Here, WeissMalik's First Declaration does not appear to contradict his prior testimony as much as it attempts to create factual disputes out of whole cloth. Although this situation does not precisely fall under the sham affidavit doctrine, it implicates the same concern. That is, if on a motion for summary judgment the non-movant is allowed to submit affidavits contradicting the facts set forth therein with no reliance on otherwise admissible evidence already in the record, the non-movant could defeat summary judgment every time. Accordingly, based on its timing and content, the court disregards WeissMalik's First Declaration [DE-231-1].[2] To the extent 360 Mortgage disputes facts within Stonegate's SUMF solely on the basis of that declaration, those facts are considered undisputed.

### B. 360 Mortgage's Objections

360 Mortgage objects to portions of the declarations of Lisa Glenn, David Tyndall, Samuel Watson, Chad Ludwig, and John Smith on the basis of a lack of personal knowledge and

---

[2] Remaining references to statements by WeissMalik refer to his second declaration at docket entry 230-10 ("WeissMalik's Second Declaration" or "WeissMalik Decl. II").

3

hearsay. *See* Pl.'s Objs. [DE-229] (citing Rule 56(c)(4) and *Antonio v. Barnes*, 464 F.2d 584 (4th Cir. 1972), without discussion). Upon reviewing Stonegate's response, the court finds 360 Mortgage's objections are without merit.

### III. FACTUAL BACKGROUND

This action arises out of Stonegate's recruitment and employment of Glenn. 360 Mortgage alleges Stonegate used information acquired by Glenn during her employment with 360 Mortgage to improve Stonegate's performance in the North Carolina mortgage industry. As a result, 360 Mortgage claims it lost significant business in the state.

360 Mortgage and Stonegate are competitors in the mortgage lending industry.[3] In July 2011, after having worked in the mortgage industry for approximately 15 years, 360 Mortgage hired Glenn as an account executive.[4] Glenn's employment agreement provided that her employment with 360 Mortgage was terminable at will by either party.[5] Account executives generally are responsible for managing the relationship between a mortgage lender and the brokers with whom it works.[6] As an account executive, Glenn had partial access to 360 Mortgage's password-protected mortgage broker database, which included names, addresses, email addresses, and phone numbers as well as additional data on each broker's business.[7] In particular, Glenn had access only to information associated with the brokers that 360 Mortgage assigned to her.[8]

Glenn worked for 360 Mortgage for approximately five months. In December 2011, Glenn resigned from 360 Mortgage and began working for Stonegate.[9] On December 2, 2011,

---

[3] SUMF [DE-211] ¶ 2; SUMF Resp. [DE-231] ¶ 2.
[4] SUMF ¶ 65; SUMF Resp. ¶ 65.
[5] Glenn 2011 Employment Agreement [DE-230-11] ¶ 10.
[6] SUMF ¶ 20; SUMF Resp. ¶ 20.
[7] WeissMalik Decl. II, Pl.'s App. 10 [DE-230-10] ¶ 15; Interrog. Resp., Pl.'s App. 31 [DE-230-30] at 1.
[8] WeissMalik Decl. II, Pl.'s App. 10 ¶ 15.
[9] SUMF ¶ 160, 188; SUMF Resp. ¶ 160, 188.

4

prior to tendering her resignation from 360 Mortgage, Glenn sent three emails from her 360 Mortgage Outlook email account to her personal email account, which contained the following: (1) a distribution list of contacts Glenn claims she brought with her from her previous employment, (2) a list of Glenn's active approved customers with 360 Mortgage, and (3) a list of contacts and competitors in the mortgage industry.[10] The same day, Glenn also sent an electronic fax to Jeffrey Lochmandy, a regional account manager at Stonegate, which included the following: (1) a list of accounts assigned to Glenn by 360 Mortgage; (2) a chart of Glenn's funded loans with 360 Mortgage from August 1, 2011 to November 7, 2011; (3) a chart of Glenn's loans with activity for the same time period; and (4) a chart of Glenn's loans with no activity as of December 1, 2011.[11] On December 12, 2011, Glenn re-sent the three December 2 emails to herself.[12]

In April 2013, 360 Mortgage hired a new account executive to service its North Carolina brokers.[13] This new account executive worked for 360 Mortgage for approximately six months, until October 2013.[14]

## IV. LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The movant bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue indeed exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[10] SUMF ¶ 151(a)–(c); SUMF Resp. ¶ 151(a)–(c).
[11] SUMF ¶ 142–43; SUMF Resp. ¶ 142–43.
[12] SUMF ¶ 151(a)–(c); SUMF Resp. ¶ 151(a)–(c).
[13] SUMF ¶ 198; SUMF Resp. ¶ 198.
[14] SUMF ¶ 200–02; SUMF Resp. ¶ 200–02.

5

587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322–23. Thus, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court may grant summary judgment. *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). When making the summary judgment determination, the court views the facts and all reasonable inferences in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255.

## V. DISCUSSION[15]

Stonegate moves for summary judgment on each of 360 Mortgage's claims. The court will address each claim in turn.

### A. Misappropriation of Trade Secrets

Stonegate first moves for summary judgment on 360 Mortgage's misappropriation of trade secrets claim ("Claim D"). In Claim D, 360 Mortgage alleges Stonegate violated the North Carolina Trade Secrets Protection Act ("NCTSPA") by improperly obtaining information on brokers with whom 360 Mortgage does business and using that information to improve Stonegate's performance in the mortgage industry in North Carolina.

North Carolina law defines a "trade secret" as "business or technical information" that:

   a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

   b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[15] Stonegate contends North Carolina law applies to the claims at issue here, and 360 Mortgage does not argue this point. Thus, the issue appears undisputed. Nevertheless, the court has carefully considered Stonegate's choice of law arguments and finds them meritorious. For the reasons stated in the memorandum [DE-214] in support of the motion for summary judgment, the court applies North Carolina law in this case.

6

N.C. Gen. Stat. § 66-152(3). To prevail on a claim for misappropriation of trade secrets, a plaintiff must demonstrate that the defendant: "(1) [k]nows or should have known of the trade secret; and (2) [h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. Before considering whether 360 Mortgage raises an issue of triable fact as to the existence of any trade secret or damages resulting from any alleged misappropriation thereof, the court first addresses Stonegate's argument that 360 Mortgage failed to adequately identify all its purported trade secrets.

A plaintiff alleging misappropriation of a trade secret must "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 426 (E.D.N.C. 2015) (quoting *Analog Devices v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)). Although a plaintiff "need not define every minute detail of its trade secrets down to the finest detail," *RoundPoint Mortgage Co. v. Florez*, No. 13 CVS 8803, 2016 WL 687629, at *12 (N.C. Super. Feb. 18, 2016) (internal quotations omitted), a mere statement of vague categories will not suffice. *See Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 200 F. Supp. 2d 541, 544–45 (M.D.N.C. 2002). A plaintiff may satisfy this burden by "actually producing the information that it claims deserves protection." *RoundPoint Mortgage Co.*, 2016 WL 687629, at *12.

Here, 360 Mortgage claims the following contain trade secrets: (1) the December 2 and 12 emails Glenn sent to herself; (2) the December 2 fax Glenn sent to Lochmandy; and (3) 360 Mortgage's broker database. *See* Summ. J. Resp. [DE-228] ¶ 41. As to the broker database,

7

Stonegate argues that 360 Mortgage falls short of identifying the purported trade secrets therein with sufficient particularity. *See* Mem. Summ. J. [DE-214] at 8. The court agrees.

360 Mortgage attempts to identify as trade secrets all information accessible by Glenn during her employment with 360 Mortgage related to sixty brokers, including contact information, historical data on loans closed by the brokers, the status of the brokers' pending loans, and 360 Mortgage's relationship with the brokers. In particular, 360 states that Glenn had access to the following data regarding the sixty brokers:

> (a) which Brokers are productive (e.g., have large loan volumes) and which are not; (b) business trends regarding such Brokers' business (e.g., whether their business is on the increase or decrease, although the analysis is more sophisticated); (c) the types of loan products each such Broker tends to utilize (such as conventional, government backed, among other things); (d) profiles of the brokers' customers (i.e. the ultimate borrowers), including amounts of down payment typically generated with their customers/borrowers, typical loan amount ranges, and credit profiles; and (e) whether they specialize in re-financings (which means they will be less active in times of rising interest rates) or originate purchases. [360 Mortgage] also tracks loan pricing on brokers so that it can determine which brokers are more profitable and which are less profitable to do business with.

Am. Compl. [DE-73] ¶ 11; *see* Interrog. Resp., Pl.'s App. 31 [DE-230-30] at 1 (stating Glenn had access to information "regarding the activity of mortgage loans generated by brokers . . . [including] lists of 'new locks' which are locked loans; approved loans; the cue [sic] of loans set to close; loans with recent activity; loans with no activity; funded loans; new loans excluding registered loans; and underwriting status of existing loans").

Beyond generally identifying the type of data contained in its broker database, 360 Mortgage fails to detail the trade secret information purportedly contained therein. 360 Mortgage proposes no way for this court to determine whether any of the broker files in the database in fact contain trade secret information. *See, e.g., RoundPoint Mortgage Co.*, 2016 WL 687629, at *12 (plaintiff described categories of purported trade secrets then "specified by Bates number

approximately 600 documents that it contend[ed] [fell] within these categories, and supplement[ed] its identification with screenshots, affidavits, expert testimony, and deposition testimony"); *Static Control Components, Inc.*, 200 F. Supp. 2d at 545 (plaintiff "produced the actual customer list and vendor information that it claims [were] trade secrets"). It may well be that some of the information contained within the broker database contains trade secrets entitled to protection. However, based on the record before it, considering the issue in the light most favorable to the plaintiff, the court cannot make that determination. 360 Mortgage simply fails to offer admissible evidence to support its vague and overly broad description. Accordingly, the court finds that the content of the broker database does not constitute a trade secret.

### *1. Does the information contained in the December 2 and 12 emails and December 2 fax constitute a trade secret?*

The court now considers whether 360 Mortgage raises an issue of triable fact as to the existence of any trade secret contained within the December 2 and 12 emails and the December 2 fax. Stonegate argues information contained therein is not a trade secret because (1) most of the information consists merely of names and e-mail addresses; (2) most of the sixty identified brokers were also on a list of customers Glenn brought to 360 Mortgage from her previous employer; (3) 360 Mortgage compiled the information in the ordinary course of its business without expending "any significant amount of effort or money" on development; and (4) the information contained in the six emails sent by Glenn was not maintained by 360 Mortgage as confidential. *See* Mem. Summ. J. [DE-214] at 8–10. 360 Mortgage counters that the information at issue here is more than a mere customer list, as it includes information compiled at great effort and expense by the company.

In determining whether the information at issue constitutes a trade secret, the court considers the following: (1) the extent to which the information is known outside the business;

9

(2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others. *Combs & Associates, Inc. v. Kennedy*, 147 N.C. App. 362, 369–70, 555 S.E.2d 634, 640 (2001). The court considers each factor in turn.

### *a. The extent to which the information is known outside the business*

To the extent the information consists of mortgage brokers' names and contact information, this information is widely known and easily obtained from the internet, a traditional phone book, or industry sources. SUMF [DE-211] ¶ 133; SUMF Resp. [DE-231] ¶ 133. Such information has been found insufficient to qualify as a trade secret in North Carolina. *See, e.g., Combs & Associates, Inc. v. Kennedy*, 147 N.C. App. at 370, 555 S.E.2d at 640 (explaining customer lists containing information that could have been compiled "through public listings such as trade show and seminar attendance lists" are not considered trade secrets) (citing *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478, 528 S.E.2d 918, 922 (2000)). 360 Mortgage, however, contends the information represents more than mere contact information. 360 Mortgage argues that its broker list represents the culmination of its significant effort to research individual brokers and that the list contains only those brokers who are deemed worthy to do business with the company. *See* Greco Decl., Pl.'s App. 9 [DE-230-9] ¶¶ 6–7. Thus, the value of the list lies not only in the names or contact information therein, but in the fact that those brokers have been pre-screened and found to meet 360 Mortgage's discriminating standards. To the extent the broker lists contained in the emails and fax indicate which brokers have been vetted and approved to do business with 360 Mortgage, that

information would not be public knowledge. *See, e.g., Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375–76, 542 S.E.2d 689, 692 (2001) (holding that a customer list containing "detailed cost records as to the materials, labor and equipment required for each of its contracts over a period of seventeen years" constituted a trade secret). This factor weighs in favor of 360 Mortgage.

### b. *The extent to which it is known to employees and others involved in the business*

Each account executive at 360 Mortgage has access only to the broker information for her own accounts. WeissMalik Decl. II, Pl.'s App. 10 [DE-230-10] ¶ 15. Although an account executive's access to her own accounts is unlimited, each individual broker's information is available only to employees who have been specifically assigned to that broker by 360 Mortgage. *Id.* Accordingly, this factor weighs in favor of 360 Mortgage.

### c. *The extent of measures taken to guard the secrecy of the information*

The information in the December 2 and 12 emails was taken from Glenn's Outlook files, and was compiled by Glenn herself. SUMF [DE-211] ¶¶ 150–51; SUMF Resp. [DE-231] ¶¶ 150–51. The information in the fax, however, was taken from 360 Mortgage's secure website, which is password protected. SUMF [DE-211] ¶ 143; WeissMalik Decl. II, Pl.'s App. 10 [DE-230-10] ¶ 18. Moreover, as discussed above, only those employees with a direct need for the information had access to the individual broker account details housed on 360 Mortgage's website. WeissMalik Decl. II, Pl.'s App. 10 [DE-230-10] ¶ 15. In short, 360 Mortgage took every reasonable precaution to ensure its information would not be accessible to those outside its business. This factor weighs in favor of 360 Mortgage.

#### d. *The value of information to the business and its competitors*

360 Mortgage contends its due diligence process is so rigorous that access to a list of its approved brokers would relieve a competitor of the burden of vetting potential broker customers. *See* Greco Decl., Pl.'s App. 9 [DE-230-9] ¶ 12 ("A competitor who obtained access to the Broker List and/or information associated with the Brokers, would be able to bypass the lengthy process of finding, vetting, and accumulating data, and begin to compete immediately with 360 Mortgage by using these Brokers to obtain work."). 360 Mortgage, however, has failed to put forth evidence demonstrating this to be the case. Although 360 Mortgage's President and CEO Mark Greco characterizes 360 Mortgage's broker vetting process as extensive, there is no evidence of the actual value of this process or the list it produces. There is no evidence that other companies' processes are less rigorous, and there is no evidence that other mortgage companies would be willing to forego their own approval processes in reliance on that of a competitor. Because 360 Mortgage fails to direct the court to any admissible evidence related to the value of the purported trade secret information, this factor weighs in favor of Stonegate.

#### e. *The amount of effort or money expended in developing the information*

360 Mortgage argues that it expends significant time and effort on vetting brokers, and thus on compiling its list of approved brokers. *See* Greco Decl., Pl.'s App. 9 [DE-230-9] ¶ 6. ("360 Mortgage spends considerable sums identifying, vetting and doing due diligence on prospective mortgage brokers with whom 360 Mortgage agrees to do business. The company will typically search for brokers that have good reputations in the industry. It will do such things as run credit, criminal and other background checks on the principals."). 360 Mortgage fails to submit any evidence, however, that the efforts it describes are truly significant. The company points to no evidence quantifying its vetting process in terms of money or time invested. Because

360 Mortgage directs the court to no evidence on this point, this factor weighs in favor of Stonegate.

### f. *The ease or difficulty with which the information could properly be acquired or duplicated by others*

The names and contact information for individual brokers is easily replicated by reference to publicly available sources. To the extent the emails and fax indicate brokers who are worthy of a business relationship, 360 Mortgage has pointed to no evidence of a process that would not be readily available to any of its competitors. Nor has 360 Mortgage pointed to any evidence that its competitors are not already engaged in a similar broker approval process. This factor weighs in favor of Stonegate.

Upon consideration of the above factors, the court finds 360 Mortgage fails to raise an issue of triable fact as to the existence of any trade secret. Accordingly, Stonegate is entitled to summary judgment on the misappropriation of trade secrets claim.

### 2. *Proximate Cause*

Stonegate further argues that, even if the information at issue constitutes a trade secret, 360 Mortgage fails to raise an issue of triable fact as to damages resulting from any alleged misappropriation thereof. *See* Mem. Summ. J. [DE-214] at 11–14.

"In order to obtain actual damages, a plaintiff must demonstrate that a defendant's misappropriation of trade secrets proximately caused injury to the plaintiff." *RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 698 (E.D.N.C. 2014), *aff'd*, No. 14-2351, 2016 WL 4039679 (4th Cir. July 28, 2016). Probable cause is that "which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and such injuries were probable under all the facts as they existed." *Id.* (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559 (1984)). Proof of

causation "must be such as to suggest 'probability' rather than mere 'possibility.'" *Id.* (quoting *Sakaria v. Trans World Airlines,* 8 F.3d 164, 172–73 (4th Cir. 1993)).

360 Mortgage calculates its damages using three alternative compensation models, which consider, respectively, "(a) 360 Mortgage's economic losses (b) the unjust enrichment/benefits obtained by the Defendants, and/or (c) a reasonable royalty, based among other things on the profits and results Defendants themselves expected to recover or receive." Interim Partial Damage Analysis, Def.'s App. 57 [DE-213-39] at 1. Depending on the compensation model used, 360 Mortgage seeks to recover between $2,020,345 and $8,647,933. *Id.* at 7; Supp. Interim Partial Damage Analysis, Def.'s App. 58 [DE-213-40] at 4–5.

Regardless of the damage model, Stonegate argues 360 Mortgage cannot show that any loss it suffered was proximately caused by Stonegate. Stonegate contends that 360 Mortgage fails to produce any admissible evidence that it lost business as a result of Stonegate's alleged misappropriation of its trade secrets. Moreover, Stonegate asserts that undisputed evidence exists of other possible causes for a decline in 360 Mortgage's business. *See* Mem. Summ. J. [DE-214] at 13. Regarding the importance mortgage brokers place on an account executive's presence within the state, Stonegate submits declarations from mortgage brokers who indicate they "will not do business with a lender unless it has a physical presence in the community," Tyndall Decl., Def.'s App. 6 [DE-212-6] ¶ 9, and that "it is very important in the mortgage industry to have an account executive 'on the ground' in the region in which he or she works," Watson Decl., Def's App. 7 [DE-212-7] ¶ 19. 360 Mortgage's perceived inability to timely fund loans also may have hampered its business prospects. *See, e.g.,* Smith Depo., Def's App. 4 [DE-213-3] at 206:19–21 (acknowledging "there were rumors in the marketplace that 360 was out of money"); Greco-Glenn Email, Def.'s App. 28 [DE-213-18] (addressing rumors that 360 was "going under");

14

Watson Decl., Def's App. [212-7] ¶13 (explaining the choice not to do business with 360 Mortgage was based in part on learning "that 360 Mortgage had lost some or all of its warehouse funding"). In response, 360 Mortgage fails to offer any admissible evidence to rebut Stonegate's suggested intervening causes. Moreover, 360 Mortgage fails to offer any admissible evidence that any mortgage broker's choice to forego business with 360 Mortgage was influenced in any way by Stonegate.

Because 360 Mortgage offers no evidence of causation, summary judgment in favor of Stonegate on this issue is appropriate.

### B. Tortious Interference with Contract

Next, Stonegate moves for summary judgment on 360 Mortgage's tortious interference with contract claim (Claim B). In Claim B, 360 Mortgage alleges Stonegate intentionally interfered with "contracts" between 360 Mortgage and Glenn.[16]

To withstand summary judgment as to a tortious interference claim, a plaintiff must raise a triable issue as to five elements: (1) a valid contract exists between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induced the third person not to perform the contract; (4) the defendant acted without justification; (5) the lack of performance of the contract resulted in actual damage to the plaintiff. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). Stonegate argues that 360 Mortgage fails to raise a triable issue as to the second (defendant's knowledge of the contract) and fourth elements (reason for defendant's action). *See* Mem. Summ. J. [DE-214] at 21–24. Because the court finds 360

---

[16] As Stonegate points out, only one contract existed between 360 Mortgage and Glenn—the 2011 Employment Agreement. *See* Mem. Summ. J. [DE-214] at 21; Glenn 2011 Employment Agreement [DE-230-11].

15

Mortgage fails to raise a triable issue as to Stonegate's alleged unjustified action, the court does not consider the argument as to the second element.

North Carolina courts are clear that "interference may be justified when the plaintiff and the defendant are competitors." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222–23, 367 S.E.2d 647, 650 (1988). The North Carolina Supreme Court, recognizing that "[t]he free enterprise system demands that competing employers be allowed to vie for the services of the 'best and brightest' employees without fear of subsequent litigation for tortious interference," concluded that a defendant's interference is justified when it hires a plaintiff's former employees and places them in the same territory where they once worked for the plaintiff. *Id.* The court held that "[t]o restrict an employer's right to entice employees, bound only by terminable at will contracts, from their positions with a competitor or to restrict where those employees may be put to work once they accept new employment savors strongly of oppression." *Id.* at 651.

Here, it is undisputed that 360 Mortgage and Stonegate are competitors in the mortgage industry[17] and that Glenn was subject to only a terminable at-will employment agreement with 360 Mortgage.[18] 360 Mortgage points to no evidence that Stonegate's alleged interference with Glenn's 2011 Employment Agreement was for any reason other than a legitimate desire to compete.[19] Thus, 360 Mortgage cannot show that the interference was "without justification." Accordingly, Stonegate is entitled to summary judgment on the tortious interference with contract claim.

---

[17] *See* SUMF [DE-211] ¶ 2; SUMF Resp. [DE-231] ¶ 2

[18] Glenn 2011 Employment Agreement [DE-230-11] ¶ 10

[19] Plaintiff's response to Stonegate's arguments with regard to the tortious interference with contract claim is limited to the following: "Not only does this conduct establish tortious interference on the part of SMC, it also establishes their joint participation and aiding and abetting of breaches of fiduciary duty as well as their joint participation and aiding and abetting the theft of trade secrets." Summ. J. Resp. [DE-228] ¶ 47. There is no citation to any admissible evidence on this issue.

## C. Tortious Interference with Prospective Economic Advantage

Stonegate also moves for summary judgment on 360 Mortgage's claim for tortious interference with prospective economic advantage (Claim C). In Claim C, 360 Mortgage alleges that "Stonegate's actions constitute interference with 360 Mortgage's prospective economic advantage." Am. Compl. [DE-73] ¶ 54.

To prove a claim for tortious interference with prospective economic advantage, a plaintiff must show that defendants "induced a third party to refrain from entering into a contract with [p]laintiff without justification," and that "the contract would have ensued but for [d]efendants' interference." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002). Here, Stonegate argues that 360 Mortgage fails to create a triable issue of material fact as to the existence of a third-party contract. *See* Mem. Summ. J. [DE-214] at 20–21. 360 Mortgage completely ignores this argument. In failing to provide any evidence that it typically enters into contracts with brokers or that any contract would have ensued with a particular broker but for Stonegate's actions, 360 Mortgage fails to raise an issue of triable fact as to this claim. Accordingly, Stonegate is entitled summary judgment as to Claim C.

## D. Breach of Fiduciary Duty

Stonegate next moves for summary judgment on 360 Mortgage's claim for breach of fiduciary duty (Claim E). In Claim E, 360 Mortgage alleges that Stonegate participated in Glenn's breach of fiduciary duties owed to 360 Mortgage. Am. Compl. [DE-73] ¶ 61.

To prove a breach of fiduciary duty, a plaintiff must first demonstrate the existence of a fiduciary relationship between the parties. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). A fiduciary relationship is one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the

17

interests of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*.'" *Id.* at 707–08 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (emphasis in original). Generally, employees are not deemed fiduciaries of their employers because "the relation of employer and employee is not one of those regarded as confidential." *Id.* at 708 (quoting *King v. Atlantic Coast Line R.R. Co.*, 157 N.C. 44, 72 S.E. 801, 808 (1911)); *see also Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 224 N.C. App. 401, 410, 742 S.E.2d 535, 542 (2012).

360 Mortgage alleges Stonegate "knowingly and intentionally participated" in Glenn's breach of her fiduciary duties to 360 Mortgage. Am. Compl. [DE-73] ¶ 61. Stonegate contends, however, that 360 Mortgage fails to offer evidence that a fiduciary relationship existed between Glenn and 360 Mortgage. *See* Mem. Summ. J. [DE-214] at 24–26. Specifically, Stonegate argues "there is no evidence that supports Glenn, a North Carolina-based employee, having dominated or controlled 360 Mortgage." *Id.* at 25 (citing *Dalton*, 548 S.E.2d at 707–08). In response, 360 Mortgage offers WeissMalik's Second Declaration that Glenn was a "valued and trusted agent" owing fiduciary duties to the company. Summ. J. Resp. [DE-228] ¶ 46. WeissMalik's declaration, however, demonstrates Glenn's lack of domination or control over 360 Mortgage. In particular, WeissMalik states that "Glenn had no latitude in following the explicit procedures and protocols that 360MTG had put into place . . . . She was required to follow them both procedurally and substantively," and that Glenn "had no authority to vary" from the company's guidelines and instructions. WeissMalik Decl. II, Pl.'s App. 10 [DE-230-10] ¶ 28. Because 360 Mortgage offers no evidence that Glenn exercised domination or control over 360 Mortgage, or that her relationship with 360 Mortgage was somehow different from the typical employer-

18

employee relationship, it cannot prove a fiduciary duty. Accordingly, summary judgment in favor of Stonegate is appropriate on this issue.

**E. Conversion and Theft**

In Claim F, 360 Mortgage alleges Stonegate "unlawfully and wrongfully [took] and/or maintained possession of personal property that rightfully belongs to 360 Mortgage."[20] *See* Am. Compl. [DE-73] ¶ 65. In particular, 360 Mortgage claims Stonegate unlawfully took property consisting of "confidential, proprietary or trade secret information belonging to 360 Mortgage." *Id.* Stonegate argues this claim is preempted by the Copyright Act, 17 U.S.C. § 101, *et. seq. See* Mem. Summ. J. [DE-214] at 26–27. 360 Mortgage fails to respond to this argument.

The Fourth Circuit applies a two-part test to determine whether a claim is preempted by the Copyright Act. First, the court must determine "whether the claim falls within the subject matter of copyright." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 309 (4th Cir. 2012) (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)). Second, the court asks whether the claim "protects rights that are equivalent to any of the exclusive rights of a federal copyright." *Id.* (quoting *Carson*, 344 F.3d at 456). Applying this test, the Fourth Circuit has concluded that where a plaintiff "alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work," the claim is preempted. *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997).

Here, as Stonegate points out, 360 Mortgage alleges the conversion of only information—not the "tangible object embodying" it. *See id.* 360 Mortgage has not responded to

---

[20] In North Carolina, conversion is the wrongful assumption and exercise of ownership over plaintiff's property, to the exclusion of plaintiff's rights as the owner. *See Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321 (1984).

19

the contrary. Accordingly, because this claim is preempted by federal copyright law, Stonegate is entitled to summary judgment.

### F. Remaining Claims

The remaining claims—conspiracy, aiding and abetting, *respondeat superior*, unjust enrichment, constructive trust, punitive damages, and injunction—fail for want of an underlying substantive claim. Accordingly, Stonegate is entitled to summary judgment on each of these claims.

## VI. CONCLUSION

For the foregoing reasons, Defendant Stonegate Mortgage Corporation's motion [DE-210] for summary judgment is ALLOWED as to all claims. The parties' pretrial motions [DE-246, -248, -250, -252, -254, -256, -261, -263, -265, -267, -269] are DISMISSED as moot. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 14 day of September, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge